OPINION
Appellants Marshall and Denise Brown appeal the decision of the Canton Municipal Court concerning various issues surrounding eviction proceedings filed by Appellee Russell Latimer. The following facts give rise to this appeal.
In April 1992, Appellants Marshall and Denise Brown entered into a lease agreement, with Nancy Danaher, to lease a condominium located at 3003 Lee St. NW, North Canton. The lease agreement contained an option to purchase. Due to financial difficulties, appellants were not able to exercise their option to purchase the condominium. Thereafter, in 1994, Appellant Marshall Brown searched Stark County real estate records in order to find an out-of-town buyer for the condominium. Appellant Brown found the name of Appellee Russell Latimer and asked him if he would be interested in making some money in a real estate deal through the purchase and sale of a condominium.
Appellee Marshall Brown wrote Appellee Latimer a letter and signed a Leaseback Agreement on December 24, 1994. In the Leaseback Agreement, appellants agreed to lease the condominium for one year and thereafter, on a month-to-month basis following the purchase of the condominium by Appellee Latimer. Subsequently, Appellee Latimer received approval for a loan, to purchase the condominium from Nancy Danaher, for $80,000. Prior to the scheduled closing, Appellee Latimer paid Nancy Danaher $3,000 as a good faith down payment for the condominium. At the closing on March 15, 1995, Appellee Latimer advanced the closing costs of $5,829.16 from his own funds. Appellants Browns received personal property from the condominium totaling $4,709.13 and a cash payoff of $12,032.10 as a lienholder.
Appellants agreed to reimburse Appellee Latimer the down payment and closing costs immediately after the closing. Within a few days after the closing, Appellant Marshall Brown gave Appellee Latimer a check in the amount of $8,829.16. However, Appellant Brown did not have sufficient funds to cover the check and informed Appellee Latimer of the same. Shortly thereafter, Appellant Brown received the proceeds from the closing and gave Appellee Latimer $5,829.16, in cash, to cover the closing costs. Appellant Brown agreed to pay the remaining $3,000, but has never done so.
The parties executed a lease agreement on March 15, 1995. Pursuant to the terms of the lease agreement, appellants rented the condominium for the amount of the monthly mortgage payment. Appellants Browns were also responsible for all utilities and other costs, including repairs. Also, pursuant to the terms of the lease, appellants had a twelve-month period in which to exercise one of the following options: (1) buy the lessor's interest; (2) sublet the condominium with the lessor's permission; (3) sell the condominium to a third party; or (4) be released from the lease by the lessor. The record establishes that appellants never exercised any of these options.
Initially, appellants made the monthly mortgage payment directly to Liberty Mortgage Company. However, within a few months, appellants fell behind in the payments and Liberty Mortgage Company contacted Appellee Latimer. Appellee Latimer did not want to impair his credit rating and thereafter asked appellants to send the monthly payments directly to him. After the twelve-month lease expired, the lease became a month-to-month lease. In October 1998, appellants again fell behind in their monthly payments. Appellee Latimer began eviction proceedings, in November, by sending appellants thirty days notice. Based on appellants' promise to make the payments current, Appellee Latimer did not pursue the eviction proceedings.
However, in March, April and May 1999, appellants again failed to make their monthly rental payments. On May 28, 1999, the condominium association notified Appellee Latimer, in writing, of the various complaints and rule violations by appellants. The condominium association also informed Appellee Latimer that it intended to take the condominium with an involuntary sale if the appellants were not removed.
On May 10, 1999, Appellee Latimer served appellants with thirty days notice to terminate the tenancy. At the same time, appellants were also served with notice to leave the premises for failure to pay rent for the months of March, April and May. On June 14, 1999, a three day notice to terminate the tenancy and notice to leave the premises was served on the appellants. Appellants failed to vacate the premises and Appellee Latimer instituted this action with the trial court on June 18, 1999.
On June 25, 1999, Appellee Latimer received a bank check from Appellant Marshall Brown in the amount of $3,160 to cover the rent for March, April and May. At a hearing before the trial court on July 12, 1999, Appellant Brown indicated that he paid the rent for March, April, May and June. The magistrate ordered Appellant Brown to stay current with the rent and deposit the rent money with the trial court. Appellee Latimer deposited the bank check immediately following the hearing before the trial court. However, the bank returned the check because Appellant Marshall Brown stopped payment on it.
Subsequently, Appellant Marshall Brown deposited the funds with the trial court and the trial court ordered the funds released to Appellee Latimer on August 27, 1999. On September 14, 1999, appellants issued a subpoena duces tecum requesting records for the property and appellee's bank statements and tax returns. On September 17, 1999, Appellee Latimer filed a motion for protective order which the trial court subsequently granted. The parties waived their right to a jury trial and this matter proceeded as a trial to the bench on November 19, 1999. In its judgment entry of November 24, 1999, the trial court granted the writ of restitution of property and granted judgment against appellants in the amount of $428.84.
Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 I. THE APPELLANTS WERE DENIED A FAIR TRIAL BY THE TRIAL COURT'S RULING PRECLUDING THE DISCOVERY OF EVIDENCE NECESSARY TO ESTABLISH A DEFENSE.
 II. THE TRIAL COURT ABUSED IT'S (SIC) DISCRETION AND/OR ERRED AS A MATTER OF LAW BY FAILING TO AWARD APPELLANTS INTEREST ON THEIR SECURITY DEPOSIT PURSUANT TO R.C. 5321.16.
 III. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY RULING THAT APPELLANTS WERE REQUIRED TO PAY THE CONDOMINIUM ASSOCIATION FEES AND THE TRIAL COURT'S FAILURE TO ORDER APPELLEES TO REIMBURSE APPELLANTS FOR THOSE FEES.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN AWARDING APPELLEES DAMAGES WITHOUT CONSIDERING DEPRECIATION, NORMAL WEAR AND TEAR AND REPAIRS MADE BY THE APPELLANTS.
 I
Appellants contend, in their First Assignment of Error, that they were denied a fair trial because the trial court's ruling granting appellee's motion for a protective order precluded the discovery of evidence necessary to establish a defense. We disagree.
Appellants sought the discovery of appellee's bank statements and tax returns, from 1999 to the present, in order to establish that they wired appellee $8,829.16. Appellee Latimer testified, at trial, that appellants only paid him $5,829.16. Tr. 169-170. Appellants claim these documents would have conclusively established that they paid appellee the entire amount owing.
We review a trial court's disposition of discovery matters for an abuse of discretion. State ex rel. The V. Cos. v. Marshall
(1998), 81 Ohio St.3d 467, 469. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. The trial court is not unrestrained in its exercise of discretion, but must "consider the interests of parties seeking discovery and the interests of parties and non-parties resisting discovery." Martin v. The Budd Co. (1998), 128 Ohio App.3d 115,199.
In its judgment entry dated September 20, 1999, the trial court did not state its reasons for granting appellee's motion for protective order. Appellants contend the trial court abused its discretion when it granted Appellee Latimer's motion for protective order because the best available means for appellants to prove that they wired $8,829.16, to Appellee Latimer, was to present Appellee Latimer's bank records and tax returns. Appellants do not contend the presentation of Appellee Latimer's bank records and tax returns was the only means for them to establish proof of payment.
As such, we conclude the trial court did not abuse its discretion when it granted the motion for protective order. Appellants admit the use of Appellee Latimer's bank records and tax returns was not the only means available to prove payment of the $8,829.16. Thus, the trial court's decision to grant Appellee Latimer's motion for protective order did not completely foreclose appellant's ability to establish proof of payment.
Appellants' First Assignment of Error is overruled.
 II
Appellants contend, in their Second Assignment of Error, that the trial court abused its discretion and/or erred as a matter of law by failing to award appellants interest on their security deposit pursuant to R.C. 5321.16. We disagree.
In support of this argument, appellants cite R.C. 5321.16(A), which provides as follows:
 (A) Any security deposit in excess of fifty dollars or one month's periodic rent, whichever is greater, shall bear interest on the excess at the rate of five percent per annum if the tenant remains in possession of the premises for six months or more, and shall be computed and paid annually by the landlord to the tenant.
We have reviewed the record in this matter and agree with Appellee Latimer that from the inception of this case until the trial court's judgment entry disposing of this matter, appellants did not mention a security deposit nor did they plead a security deposit in their answer or amended answer. Further, Appellee Latimer testified there was no security deposit and that the costs he incurred were the earnest money deposit and closing costs. Tr. at 218. Finally we would note that the lease agreement does not indicate that appellants paid a security deposit. Because appellants never paid a security deposit, the trial court did not err when it failed to award interest pursuant to R.C. 5321.16(A).
Appellants' Second Assignment of Error is overruled.
 III
In their Third Assignment of Error, appellants maintain the trial court abused its discretion and/or erred when it found that appellants were required to pay the condominium association fees. We disagree.
In support of this assignment of error, appellants refer to the lease agreement which admittedly contains no provision requiring appellants to pay a fee to the condominium association. At trial, Appellee Latimer testified that the condominium association fees were included within the written language of the lease agreement as either a "utility" or a "repair." Appellants further argue that because the lease agreement contains an incorporation clause, no implied agreement or obligation should be implied between the parties.
Although the lease agreement does not address payment of the condominium association fees, the Leaseback Agreement entered into between the parties provides that appellants would be responsible for these fees. Specifically, the Leaseback Agreement provides: "Lessees shall make the monthly mortgage payment, as well as paying all related expenses to the building including the monthly condo fee." Further, in a letter Appellant Marshall Brown sent to Appellee Latimer, Appellant Brown stated that "[c]ondo fees will be sent to you in June in full."
Clearly, based on the above provision of the Leaseback Agreement and Appellant Marshall Brown's statement in a letter sent to Appellee Latimer, appellants acknowledged their responsibility to pay the condominium association fees. In the case of Finkbeiner v. Lutz (1975), 44 Ohio App.2d 223, which is a case involving a lease agreement between two parties, the Hamilton County Court of Appeals held:
 * * * that where, as here, a course of conduct is engaged in between the parties to a lease, which conduct is contrary to the specific provisions within the lease, such conduct will speak for itself, and the parties will be estopped from denying that conduct and its immediate and logical consequences. Id. at 228.
We conclude that although the payment of condominium association fees was not addressed in the lease agreement, based on the past conduct of the parties, appellants are estopped from arguing that they are not responsible for the fees.
Appellants' Third Assignment of Error is overruled.
 IV
In their final assignment of error, appellants contend the trial court erred and/or abused its discretion when it awarded Appellee Latimer damages without considering depreciation, normal wear and tear and repairs made by appellants. We disagree.
In its judgment entry, the trial court found damages in the amount of $5,538 to the real estate. Appellee Latimer testified to this amount and addressed such items as new carpeting, painting, installing a new ceiling light, installing vinyl floor coverings, repairing a broken step, and a new bathroom tile or surround wall. Tr. at 15-17. Appellants claim the trial court's decision unjustly enriches Appellee Latimer and fails to take into consideration repairs they made to the property which included the installation of a dishwasher, replacement of a stove, repair of a broken refrigerator, re-graveling of a parking area, replacement of a furnace and cleaning and sanitizing of the duct system in the condominium.
In the case sub judice, the trial court judge listened to the witnesses, determined their credibility, and weighed the evidence. Those tasks are for the trier of fact, not the appellate court.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Based upon the state of the record before us, we cannot conclude the trial court erred when it awarded damages in this matter in the amount of $5,538.
Appellants' Fourth Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.
By: WISE, J., GWIN, P.J., concurs.
HOFFMAN, J., concurs in part and dissents in part.